Melinda Morton (Bar No. 209373)
E-mail: mindy.morton@procopio.com
PROCOPIO, CORY, HARGREAVES &
   SAVITCH LLP
3000 El Camino Real
Suite 400
Palo Alto, CA 94306
Telephone: 650.687.9020
Facsimile: 650.687.8320

Jacob Poorman (Bar No. 262261)
E-mail: Jacob.poorman@procopio.com
PROCOPIO, CORY, HARGREAVES &
   SAVITCH LLP
525 B Street
Suite 2200
San Diego, CA 92101
Telephone: 619.525.3811
Facsimile: 619.788.5511

Benjamin Herbert (Bar No. 277356)
E-mail: benjamin.herbert@procopio.com
PROCOPIO, CORY, HARGREAVES &
   SAVITCH LLP
200 Spectrum Center Drive
Suite 1650
Irvine, CA 92618
Telephone: 949.247.7302
Facsimile: 619.235.0398

Attorney for Plaintiffs
Zest IP Holdings, LLC, and
Zest Anchors, LLC

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| ZEST IP HOLDINGS, LLC, and ZEST ANCHORS, LLC, | Case No. 3:26-cv-02869-GPC-MMP |
|---|---|
| Plaintiffs, | **FIRST AMENDED COMPLAINT – REDACTED** |
| v. | |
| TERRATS MEDICAL SOCIEDAD LIMITADA and MEDEALIS GMBH, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

Plaintiffs Zest IP Holdings, LLC and Zest Anchors, LLC, (collectively "Zest"), by and through their undersigned counsel, allege as follows:

**INTRODUCTION**

1.      Zest seeks monetary damages from Defendants Terrats Medical Sociedad Limitada ("Terrats") and Medealis GmbH ("Medealis") (collectively, "Defendants") under California law regarding Defendants' breach of a Settlement Agreement between Zest and Terrats, dated April 3, 2024 (the "Settlement Agreement").  Zest also seeks an injunction to prevent Defendants from continuing to breach the Settlement Agreement.

2.      In April 2026, Zest learned that Terrats had begun manufacturing for and selling to Preat Corporation ("Preat") a new dental implant product line marketed under the "PreatLoc" brand.

3.      In June 2026, Zest learned that Medealis is also manufacturing for and selling to Preat the new dental implant product line marketed under the "PreatLoc" brand.

4.      The Settlement Agreement does not authorize Defendants' manufacturing for and sale of the "PreatLoc" brand of products to Preat.

5.      By deliberately engaging with Preat to manufacture for and sell to Preat the "PreatLoc" brand of products, Defendants individually and/or in concert breached the Settlement Agreement under California law and have caused Zest to suffer monetary damages.

**THE PARTIES**

6.      Plaintiff Zest Anchors, LLC ("Zest Anchors") is a limited liability company organized under the laws of Delaware, having its principal place of business at 2875 Loker Avenue East, Carlsbad, California 92010.  Zest Anchors does business under the name Zest Dental Solutions.

7.      Plaintiff Zest IP Holdings, LLC ("Zest IP Holdings") is a limited liability company organized under the laws of Delaware, having its principal place of business

2

at 2875 Loker Avenue East, Carlsbad, California 92010.  Zest IP Holdings owns Zest's trademarks.

8.    Zest is informed and believes, and thereon alleges that Defendant Terrats was, and is, a Spanish limited liability company with a principal place of business and production facility at Carrer de Mogoda, 75-99, 08210 Barberà del Vallès, Barcelona, Spain.

9.    Zest is informed and believes, and thereon alleges that Defendant Medealis was, and is, a German limited liability company with a principal place of business in Absteinach, Germany.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the controversy is between parties that are a citizen of a state (Zest) and parties that are citizens or subjects of a foreign state (Terrats and Medealis), and Zest has suffered damages in excess of $75,000 as a result of Defendants' breach of the Settlement Agreement.

11.    The Court has personal jurisdiction over Terrats because Terrats agreed to personal jurisdiction in the United States District Court for the Southern District of California for any dispute relating to the Settlement Agreement. Specifically, Paragraph 9 of the Settlement Agreement provides:

> Any disputes relating to this Settlement Agreement shall be brought exclusively in the United States District Court for the Southern District of California or in the San Diego Superior Court of the State of California in the event that federal jurisdiction is lacking. All Parties submit to the personal jurisdiction of the United States District Court for the Southern District of California, or to the San Diego Supreme Court of the State of California, for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.

12.    The Court also has personal jurisdiction over Defendants under the California long-arm statute because Zest's claim arises from Defendants causing

injury to Zest in California, and because the assertion of jurisdiction over Defendants is consistent with the constitution of the State of California and the Due Process Clause of the Fourteenth Amendment.

13. In addition, the Court has personal jurisdiction over Terrats because it did not contest personal jurisdiction in previous litigation in this Court, which resulted in the Settlement Agreement, and purposefully availed itself of the rights and benefits of this Court by asserting counterclaims in that litigation. *See Zest Anchors, LLC d/b/a/ Zest Dental Solutions and Zest IP Holdings, LLC v. Geryon Ventures, LLC d/b/a DESS-USA and Terrats Medical Sociedad Limitada*, Case No. 3:22-cv-00230 (S.D. Cal.) (the "DESS Litigation"), Counterclaims and Answer (Dkt. No. 30).

14. The Court has personal jurisdiction over Medealis because it purposefully availed itself of the rights and benefits of this Court by asserting counterclaims in this action. Dkt. No. 14.

15. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(c)(3) because Defendants are not resident in the United States and therefore may be sued in any judicial district.

16. Venue is also proper in the United States District Court for the Southern District of California because Terrats agreed to venue in this Court for any dispute relating to the Settlement Agreement in Paragraph 9 of that agreement.

17. In addition, venue is proper in the United States District Court for the Southern District of California because Terrats did not contest venue in the Dess Litigation, which resulted in the Settlement Agreement. *See* DESS Litigation, Counterclaims and Answer (Dkt. No. 30).

## GENERAL ALLEGATIONS

**I. THE DESS LITIGATION**

18. Since at least September 1999, Zest has used its trademark and trade dress for its LOCATOR® product suite in the field of dental retention inserts for removable overdentures. Zest is a global leader in the research, development, and

4

manufacturing of dental attachment product suites for securing prosthetic overdentures.

19.     Zest IP Holdings holds trademarks directed to, *inter alia*, different colors of Zest's LOCATOR® dental retention inserts ("Retention Insert Marks"). Zest's LOCATOR® retention inserts include distinctive trade dress comprised of, *inter alia*, different insert colors ("LOCATOR® Trade Dress").

20.     Customers across the United States recognize Zest's LOCATOR® retention inserts and LOCATOR® trade dress and associate them with Zest and its longstanding commitment to high quality.

21.     Terrats is a Spanish company that manufactures dental prosthetics, including retention inserts.

22.     On February 18, 2022, Zest filed the complaint in the DESS Litigation. In the DESS Litigation, Zest asserted, among other claims, trademark infringement of the Retention Insert Marks and trade dress infringement of the LOCATOR® Trade Dress against Terrats arising from its sale of products that were marketed under the "DESSLoc" brand.

## II. THE SETTLEMENT AGREEMENT

23.     After Zest obtained a preliminary injunction, which was affirmed on appeal, Zest and Terrats entered into the Settlement Agreement in April 2024 to resolve the DESS Litigation.

24.     Among other provisions, the Settlement Agreement required "DESS"[1] ███ ██████████████ and prohibited DESS from continuing to commercialize its existing DESSLoc brand of products ("DESS Inserts") in the United States, but permitted DESS to commercialize modified versions of the DESSLoc brand of products that featured a specified, modified design ("Modified Retention Inserts").

---

[1] The Settlement Agreement defines "DESS" as Terrats and Geryon Holdings, LLC f/k/a Geryon Ventures, LLC d/b/a DESS-USA.

25. Specifically, Paragraph 2.1(ii) of the Settlement Agreement provides that Terrats shall:

> Immediately and permanently ensure that DESS and its Affiliates cease using in the United States or Commercializing in any way in the United States or importing into the United States in any way DESS Inserts in blue, pink, clear, red, orange, or green; provided however, DESS, its Affiliates, or third-parties may use in the United States, Commercialize in the United States, or import into the United States the Modified Retention Inserts, whether individually or in combination[.]

26. The Settlement Agreement permits Terrats to manufacture or sell the Modified Retention Inserts only under the "DESSLoc" brand. While the Settlement Agreement does not expressly provide that Terrats may only manufacture or sell Modified Retention inserts "under the 'DessLoc' brand," that was, per the Settlement Agreement, the intent of the parties. The Settlement Agreement was entered into for the purpose of resolving Zest's claims against DESS regarding the DESS Inserts, which was the subject matter of the DESS Litigation. Accordingly, Zest's release of claims applied only to the DESS Inserts. Thus, and consistent with this understanding between the parties, the release of claims *did not* extend to Zest's claims against Terrats customer Biomet 3i, LLC d/b/a ZimVie ("Zimvie"), a former distributor for Zest for whom Terrats manufactured products, that Zimvie sold under the "OverdenSURE" brand.

27. The amount of money DESS paid Zest pursuant to the Settlement Agreement further confirms that the intent of the parties was (1) to permit Terrats to manufacture or sell only Modified Retention inserts under the "DessLoc" brand and (2) to limit Zest's release of claims to only the DESS Inserts. In contrast to the amount DESS paid, Zest's marketing expenditures and revenue generated from sales of its LOCATOR® products are well over $500 million over the past decade. And Zest has spent over $8 million dollars in obtaining and defending its Retention Insert Marks and LOCATOR® Trade Dress. Zest never would have surrendered its intellectual

property rights or to undo its marketing efforts for the sum it received from DESS under the Settlement Agreement.

28.   In exchange, Zest agreed to release its claims against "DESS" and its "past and/or present Affiliates."  "Affiliates" is defined in the Agreement to mean:

> (a) as to any specified Person, any other Person that is in control of, is controlled by, or is under common control with, such specified Person, or (b) as to any Person that is a natural Person, any such Person's spouse, parents, children, and siblings, whether by blood, adoption or marriage, residing in such Person's home or any trust or similar entity for the benefit of any of the foregoing Persons.  For purposes of this definition, "control" of a Person means the power, directly or indirectly, to direct or cause the direction of the management and policies of such Person, whether by contract or otherwise.

29.   Zest also agreed to file a stipulation of dismissal with prejudice as to Terrats in the DESS Litigation, and further agreed not to assert "any Claim that the Modified Retention Inserts . . . infringe, dilute, or otherwise violate the Retention Inserts Marks and/or the LOCATOR® Trade Dress or constitute unfair competition," against "customers of DESS or any of its Affiliates."  "Customers" is not defined in the Agreement, but, consistent with the retrospective nature of the Agreement, including the retrospective definition of "Affiliates," it was the intent of the parties that "customers" would include only DESS's current and past customers.

30.   The Settlement Agreement provides in Paragraph 10.1 that, "[i]n the event of litigation to enforce or interpret this Settlement Agreement or any provisions thereof, the prevailing Party shall be entitled to recover all costs and expenses incurred by it, including such Party's reasonable attorneys' fees."

31.   Zest performed its part of the Settlement Agreement by agreeing to submit a stipulation of dismissal with prejudice in the DESS Litigation and by releasing certain claims against Terrats and its Affiliates with respect to the DESSLoc products.

32. The Settlement Agreement provides in Paragraph 16 that "[t]his Settlement Agreement shall become binding and effective upon the Parties and their Affiliates as of the Effective Date . . . ."

33. On information and belief, Medealis is an "Affiliate" of Terrats as that term is defined in the Settlement Agreement.

**III. PREAT'S ACTIVITIES AND DEFENDANTS' BREACH**

34. In November 2025, Zest learned that one of its distributors, Preat Corporation ("Preat") terminated its distribution with Zest and launched its own line of competing products marketed under the "PreatLoc" name.

35. On March 6, 2026, Zest filed a lawsuit against Preat, captioned *Zest IP Holdings, LLC and Zest Anchors, LLC v. Preat Corporation*, Case No. 3:26-cv-01467 (S.D. Cal.) (the "Preat Litigation").

36. In the Preat Litigation, Zest has asserted, among other claims, trademark and trade dress infringement against Preat arising from Preat's sale of the "PreatLoc" products that allegedly featured Zest's Retention Insert Marks and LOCATOR® Trade Dress.

37. On April 30, 2026, Zest received a letter from counsel for Terrats indicating that Preat is a customer of Terrats.

38. On June 12, 2026, Defendants filed Counterclaims in this action alleging that Preat entered into a contract with Medealis to supply dental parts for Preat.

39. On information and belief, Defendants individually and/or in concert manufacture for and sell to Preat the PreatLoc products, which are the subject of the Preat Litigation.

40. The PreatLoc products are not "Modified Retention Inserts" that Defendants are permitted to manufacture or sell under the Settlement Agreement. Nor is Preat a "customer" under the Settlement Agreement that Zest agreed to refrain from suing for infringement.

8

41. Defendants individually and/or in concert breached the Settlement Agreement by manufacturing and selling the PreatLoc products.

42. As a result of Defendants' breach of the Settlement Agreement, Zest has suffered monetary damages, including lost profits.

43. Zest has also had to incur significant expenses in the Preat Litigation that it would not have incurred but for Defendants' breach of the Settlement Agreement.

**<u>COUNT ONE</u>**

**(Breach of Contract)**

44. Zest hereby incorporates by reference each and every allegation contained in Paragraphs 1–43 of this Complaint as though set forth fully herein.

45. The Settlement Agreement is a valid and enforceable written agreement supported by sufficient exchanges of consideration.

46. Zest did all, or substantially all, of the significant things the Settlement Agreement required it to do, by agreeing to submit a stipulation of dismissal with prejudice in the DESS Litigation and by releasing certain claims against Terrats and its customers with respect to the DESSLoc products, or was excused from having to do them.

47. All of the conditions required under the Settlement Agreement for Defendants' performance occurred, or were waived/excused.

48. By engaging in the conduct described herein, Defendants individually and/or in concert breached their contractual obligations to Zest under the Settlement Agreement.

49. Defendants individually and/or in concert breached and continue to breach Paragraph 2.1(ii) of the Settlement Agreement by manufacturing and selling the PreatLoc products to Preat.

50. By reason of Defendants' breach, Zest has been damaged, and is entitled to monetary damages in an amount to be determined by the Court and/or a jury.

## **DEMAND FOR JURY TRIAL**

Zest hereby demands a jury trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Zest respectfully requests that this Court enter an order of judgment granting all relief requested in this Complaint, including:

a. Issuing a judgment in favor of Zest and against Defendants;

b. Awarding Zest damages or other monetary relief, including pre-judgment and post-judgment interest, and further including Zest's costs and attorneys' fees in the Preat Litigation, in an amount to be determined by the Court and/or a jury;

c. Assessing Zest's costs of this action and Zest's attorneys' fees in this action against Defendants pursuant to the Settlement Agreement and California law;

d. Issuing an injunction against Defendants, their affiliates, and their respective successors, officers, agents, and employees, and anyone acting in active concert or participation with or at the behest or direction of any of them, from (i) using in the United States, (ii) manufacturing, marketing, distributing, licensing, selling, or otherwise commercializing in the United States, or (iii) importing into the United States Modified Retention Inserts not under the DESSLoc brand; and

e. Ordering or awarding any other such monetary relief that the Court deems just and proper.

DATED: July 6, 2026

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP


By: /s/ _____

Melinda Morton
Jacob Poorman
Benjamin Herbert

Attorney for Plaintiffs
Zest IP Holdings, LLC, and
Zest Anchors, LLC