UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEST IP HOLDINGS, LLC and ZEST ANCHORS, LLC,<br>Plaintiffs,<br>v.<br>TERRATS MEDICAL SOCIEDAD LIMITADA and MEDEALIS GMBH,<br>Defendant. | Case No.: 26CV2869-GPC(MMP) |
| TERRATS MEDICAL SOCIEDAD LIMITADA and MEDEALIS GMBH ,<br>Counter Claimants,<br>v.<br>ZEST IP HOLDINGS, LLC and ZEST ANCHORS, LLC,<br>Counter Defendants. | **ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND**<br>**[Dkt. No. 15.]**<br>**[REDATED ORIGINAL FILED UNDER SEAL]** |

Before the Court is Defendant Terrats Medical Sociedad Limitada's motion for judgment on the pleadings. (Dkt. No. 15.) Defendant Medealis GMBH filed a notice of joinder to the motion for judgment on the pleadings. (Dkt. No. 28.) Zest IP Holdings, LLC and Zest Anchors, LLC filed an opposition and Terrats Medical Sociedad Limitada

filed a reply. (Dkt. Nos. 29, 32.) Based on the reasoning below, the Court GRANTS Defendants' motion for judgment on the pleadings with leave to amend.

**Procedural Background**

On May 7, 2026, Plaintiff Zest IP Holdings, LLC and Zest Anchors, LLC (collectively "Plaintiffs" or "Zest") filed a complaint against Defendant Terrats Medical Sociedad Limitata ("Terrats") for breach of contract of a settlement agreement resolving the DESS litigation.[1] (Dkt. No. 1, Compl.) On June 12, 2026, Terrats filed an answer to the complaint and Terrats and Medealis Gmbh ("Medealis") filed a counterclaim against Zest. (Dkt. No. 14.) On the same day, Terrats filed a motion for judgment on the pleadings. (Dkt. No. 15.) On July 6, 2026, Zest filed its answer to the counterclaim. (Dkt. No. 20.)

Then, on July 7, 2026, Zest filed an amended complaint ("FAC") adding Medealis as a defendant. (Dkt. No. 21, FAC.) On July 13, 2026, Terrats and Medealis filed an amended answer and counterclaims against Zest alleging breach of contract and declaratory judgment. (Dkt. No. 27.) On the same day, Medealis filed a notice of joinder in Terrats' motion for judgment on the pleadings. (Dkt. No. 28.) On July 17, 2026, Zest filed its opposition to the motion for judgment on the pleadings. (Dkt. No. 29.) On July 27, 2026, Zest answered the amended counterclaims. (Dkt. No. 30.) On July 29, 2026, Terrats filed a reply to the motion for judgment on the pleadings. (Dkt. No. 32.)

**Factual Background**

According to the first amended complaint,[2] Zest alleges that it is a global leader in the research, development and manufacture of dental attachment product suites for securing prosthetic overdentures and has used its trademark and trade dress for its

---

[1] *Zest Anchors, LLC v. Geryon Ventures, LLC*, Case No. 22cv230-TWR(NLS) (S.D. Cal.)

[2] As explained in more detail below, the Court considers the motion as directed to the first amended complaint even though it was filed after the motion for judgment on the pleadings. *See Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1140 (C.D. Cal. 2015), *aff'd sub nom. Shame on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir. 2017).

LOCATOR® product suite in the area of dental retention inserts for removable overdentures since at least September 1999. (Dkt. No. 21, FAC ¶ 18.) Zest IP Holdings owns trademarks in different colors of Zest's LOCATOR® dental retention inserts ("Retention Insert Marks") and include distinctive trade dress comprised of different insert colors ("LOCATOR® Trade Dress"). (*Id.* ¶ 16.) Consumers in the United States recognize Zest's LOCATOR® retention inserts and LOCATOR® trade dress and associate them with Zest and its high quality. (*Id.* ¶ 20.) Terrats is a Spanish company that manufactures dental prosthetics including retention inserts. (*Id.* ¶ 21.) Defendant Medealis is a German limited liability company. (*Id.* ¶ 9.) On information and belief, Medealis is an "Affiliate" of Terrats. (*Id.* ¶ 33.)

On February 18, 2022, Zest file a complaint in the DESS litigation where it asserted trademark infringement of its Retention Insert Marks and trade dress infringement of the LOCATOR® Trade Dress against Terrats for its sale of products marketed under the "DESSLoc" brand. (*Id.* ¶ 22.) After Zest obtained a preliminary injunction which was affirmed on appeal, Terrats and Zest entered into a Settlement Agreement in April 2024 to resolve the DESS litigation. (*Id.* ¶ 23.) The Settlement Agreement required DESS, defined as Terrats and Geryon Holdings, LLC f/k/a Geryon Ventures, LLC d/b/a DESS-USA, to pay Zest $[redacted] and prohibited DESS from commercializing its existing DESSLoc brand of products ("DESS Inserts") in the United States but allowed DESS to commercialize modified versions of the DESSLoc brand of products that featured a specified, modified design ("Modified Retention Inserts"). (*Id.* ¶ 24.) According to Zest, even though the Settlement Agreement does not explicitly state that Terrats is permitted to sell the Modified Retention Inserts only under the "DESSLoc" brand, that was the intent of the parties. (*Id.* ¶ 26.) Zest explains that the purpose of the Settlement Agreement was to resolve its claims against DESS regarding DESS Inserts; therefore, it only released claims as to the DESS Inserts. (*Id.*) In corroboration with Zest's interpretation, the FAC maintains the release of claims did not include Zest's

claims against Biomet 3i, LLC d/b/a ZimVie ("ZimVie"), Terrats customer, for whom Terrats manufactured products that ZimVie sold under the "OverdenSURE" brand. (*Id.*)

Zest claims that the amount of money it received from DESS pursuant to the Settlement Agreement does not justify release of its intellectual property rights in light of the $500 million it has expended on marketing and generated in revenue over the past 10 years and the $8 million it has expended in obtaining and defending its Retention Insert Marks and LOCATOR® Trade Dress. (*Id.* ¶ 27.)

Zest also alleges that in exchange for the amount DESS paid, it agreed to release its claims against "DESS" and its "past and/or present Affiliates." (*Id.* ¶ 28.) Zest also claims it dismissed the DESS litigation with prejudice as to Terrats and agreed not to assert "any Claim that the Modified Retention Inserts . . . infringe, dilute, or otherwise violate the Retention Inserts Marks and/or LOCATOR® Trade Dress or constitute unfair competition," against "customers of DESS or any of its Affiliates." (*Id.* ¶ 29.) The FAC alleges that even though "customers" is not defined in the Settlement Agreement, consistent with the retrospective nature of the Agreement, including the definition of "Affiliates", it was the parties' intent that "customers" would only include DESS's current and past customers. (*Id.*) Zest claims it performed its part of the Settlement Agreement by signing a stipulation of dismissal with prejudice in the DESS litigation and releasing certain claims against Terrats and its Affiliates concerning the DESSLoc products. (*Id.* ¶ 31.)

In November 2025, Zest learned that Preat Corporation ("Preat"), one of its former distributors, launched its own line of competing products marketed under the "PreatLoc" name. (*Id.* ¶ 34.) On March 6, 2026, Zest filed a complaint against Preat in this district, *Zest IP Holdings, LLC and Zest Anchors, LLC v. Preat Corporation*, Case No. 3:26cv1467-GPC(MMP) ("Preat Litigation") alleging trademark infringement and trade dress infringement arising from Preat's sale of the "PreatLoc" products that allegedly feature Zest's Retention Insert Marks and LOCATOR® Trade Dress. (*Id.* ¶¶ 35, 36.) In April 2026, Zest learned that Terrats was manufacturing and selling to Preat, its

customer, a new dental implant product line under the PreatLoc brand. (*Id*. ¶¶ 2, 37.) In June 2026, Zest learned that Medealis is also manufacturing and selling to Preat the new dental implant product line under the PreatLoc brand. (*Id.* ¶ 3.) Zest alleges that the Settlement Agreement does not allow Defendants to sell the "PreatLoc" brand of products to Preat. (*Id.* ¶ 4.)

The FAC alleges that on June 12, 2026, Defendants filed counterclaims in this action alleging that Preat entered into a contract with Medealis to supply dental parts for Preat. (*Id.* ¶ 38.) On information and belief, Terrats and/or Medealis manufacture and sell the PreatLoc products to Preat. (*Id.* ¶ 39.) According to Zest, PreatLoc products are not "Modified Retention Inserts" that Terrats is permitted to manufacture or sell under the Settlement Agreement and Preat is not a customer of Terrats. (*Id.* ¶ 40.) Zest alleges that Defendants individually and/or in concert breached the Settlement Agreement by manufacturing and selling the PreatLoc products and Zest has suffered monetary damages, including expenses incurred in the Preat litigation and lost profits. (*Id.* ¶ 41-43.) Zest alleges one count of breach of contract. (*Id.* ¶¶ 44-50.)

## Discussion

### A. Legal Standard as to Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure ("Rule") 12(c) allows parties to move for judgment on the pleadings after the pleadings have been closed but prior to trial, and "within such time as not to delay the trial." Fed. R. Civ. P. 12(c). The standard for determining a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1053 & n.4 (9th Cir. 2011). On a Rule 12(c) motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings

that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.*

A court must not consider matters beyond the pleadings as such a proceeding must be treated as a motion for summary judgment. *Id.* However, under the incorporation by reference doctrine, the Court may consider any documents referenced in the complaint but which are not physically attached to it. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999–1002 (9th Cir. 2018) ("A plaintiff incorporates a document by reference where the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim.").

The parties do not dispute that the Settlement Agreement, attached to Keith J. Wesley's declaration as part of Defendant's opposition, may be incorporated by reference. Because the Settlement Agreement is referenced repeatedly in the FAC, forms the basis of Plaintiff's claim and the parties do not dispute its authenticity, the Court considers the Settlement Agreement as incorporated by reference in the FAC.

**B. Rule 12(c) Motion is Not Premature**

Zest argues that the motion for judgment on the pleadings is premature because the pleadings were not closed when it was filed. (Dkt. No. 29 at 23-24.[3]) Terrats disagrees arguing that the pleadings were closed on the complaint when the motion was filed. (Dkt. No. 32 at 14.)

A motion for judgment on the pleadings may be made at any time "after the pleadings are closed." Fed. R. Civ. P. 12(c). "[T]he pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made." *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). "Where a counterclaim is interposed, the filing of a reply to the counterclaim

[3] Page numbers are based on the CM/ECF pagination unless noted otherwise.

marks the close of proceedings." *Med-Sys., Inc. v. Masterson Mktg., Inc.*, No. 11-CV-695-JLS, 2011 WL 4715170, at *2 (S.D. Cal. Oct. 7, 2011); *see Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 n. 4 (7th Cir. 1982) (where "in addition to an answer, a counterclaim is pleaded, the pleadings are closed only when the plaintiff serves his reply."). Here, the pleadings as to the counterclaims were not closed when the motion for judgment on the pleadings was filed. However, because the motion for judgment on the pleadings challenges the allegations in the complaint, the pleadings are considered closed when Terrats filed its answer to the complaint on June 12, 2026. *See In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1079 (S.D. Cal. 2020) (Rule 12(c) motion not premature even though reply to counterclaim was not filed because the motion targeted only the complaint) (citing *Tibarom NV, Inc. v. Shell Oil Prod. U.S.*, No. 3:08-CV-00060-BES, 2008 WL 11404229, at *2 (D. Nev. Sept. 24, 2008) ("In this case, although a counterclaim was filed, the Court finds that the pleadings were closed for the purpose of timeliness on this motion because the motion relates solely to the claims made in the Amended Complaint.")). Because the motion attacks the complaint and those pleadings were closed when Terrats filed its motion for judgment on the pleadings, ruling on the motion is not premature.

**C. Rule 12(c) Motion is Not Moot**

Zest also argues that the motion for judgment on the pleadings is moot because Zest filed an amended complaint as a matter of course on July 7, 2026 after this motion was filed on June 12, 2026 and supersedes the original complaint. (Dkt. No. 29 at 24.) Terrats responds that the motion is not moot because the complaint and FAC are materially identical and the only addition to the FAC is adding Medealis as a Defendant. (Dkt. No. 32 at 14-15.)

The FAC adds Medealis, a Terrats' Affiliate, as a defendant and also an additional allegation in paragraph 27 claiming that the amount of money Zest received under the Settlement Agreement pales in comparison to its marketing expenditure, revenue and expenses in obtaining and defending its trademarks and trade dress. Otherwise, the filing

of the first amended complaint is nearly identical with the amended complaint and does not change the nature of Defendants' motion for judgment on the pleadings because the core facts and the legal basis on which Defendants seek judgment on the pleadings remain the same. Further, Zest, in opposition, takes into consideration the allegation in both the complaint and first amended complaint in opposing the motion and has not expressed any prejudice if the Court were to consider the motion "as directed to the amended complaint." *See Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1140 (C.D. Cal. 2015), *aff'd sub nom. Shame on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir. 2017) (citing cases) (holding the filing of an amended complaint did not moot an earlier filed motion for judgment on the pleading and construed the motion for judgment on the pleadings as directed to the later-filed complaints" because the "basis on which defendants seek judgment on the pleadings remains the same" and opposing party did not identify any prejudice). Ruling on the motion rather than denying it as moot and directing the parties to refile their briefs supports the purpose of the Rules of Civil Procedure which "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Accordingly, the Court concludes that ruling on the motion for judgment on the pleadings is not moot and construes the motion as directed to the first amended complaint.

**D. Rule 12(c) - Breach of Contract**

Defendants argue that the breach of contract claim fails as a matter of law on two grounds. First, they claim that they may sell "Modified Retention Inserts" with no brand restrictions as provided in section 2.1(ii) of the Settlement Agreement. (Dkt. No. 15 at 17-18.) Second, Defendants contend that the covenant not to sue contained in section 3.3 of the Agreement applies to Terrats' customers such as Preat. (*Id.*) Zest responds that the Rule 12(c) motion should be denied because it has pled extrinsic evidence, the intent of the parties, and its alleged meaning does not conclusively negate the meaning pled by Zest for the terms "Modified Retention Inserts" or "Customers." (Dkt. No. 29 at 13.)

Under California law, the elements of a claim for breach of contract are: "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." *First Com. Mortg. Co. v. Reece,* 89 Cal. App. 4th 731, 745 (2001). Defendants argue that they did not breach the Settlement Agreement as they and their customers, including Preat, were permitted to manufacture and sell Modified Retention Inserts.

"Under California law, the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.,* 321 F.3d 924, 925-26 (9th Cir. 2003) (citation omitted). In California, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636; *Bank of the West v. Superior Ct.,* 2 Cal. 4th 1254, 1264 (1992). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. "Any contract must be construed as a whole, with the various individual provisions interpreted together so as to give effect to all, if reasonably possible or practicable." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 68 Cal. App. 4th 445, 473-74 (1998) (citing Cal. Civ. Code § 1641[4]).

When the parties dispute the meaning of a contract term, the Court must engage in a two-step process. *Curry v. Moody*, 40 Cal. App. 4th 1547, 1552 (1995). First, the Court must determine whether the contract is ambiguous; that is whether the language is reasonably susceptible to the interpretation urged by a party. *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992). On this step, the Court "provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity.'" *Id.*; *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co*., 69 Cal. 2d 33, 37 (1968) ("The test of admissibility of extrinsic evidence to explain the

---

[4] "The whole of a contract is to be taken together, so as to give effect to every part." Cal. Civ. Code § 1641.

meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible."). If the disputed language is not reasonably susceptible to the interpretation urged by the party, the case is over. *Halicki Films, LLC v. Sanderson Sales & Mktg*., 547 F.3d 1213, 1223 (9th Cir. 2008). "If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." *Winet,* 4 Cal. App. 4th at 1165 (citation omitted).

Extrinsic evidence includes "testimony as to the 'circumstances surrounding the making of the agreement . . . including the object, nature and subject matter of the writing . . .' so that the court can 'place itself in the same situation in which the parties found themselves at the time of contracting.'" *Pac. Gas*, 69 Cal. 2d at 40. The first step on the question whether a contract is ambiguous is a "question of law." *Winet*, 4 Cal. App. 4th at 1165; *Niederer v. Ferreira*, 189 Cal.App.3d 1485, 1500 (1987) ("The initial question whether a contract is ambiguous is also one of law."). While extrinsic evidence may not "vary, alter or add to" the terms of a contract, it may be examined "'to prove a meaning to which the language of the instrument is reasonably susceptible.'" *Pac. Gas*, 69 Cal. 2d at 37, 39.

**1. "Modified Retention Inserts"**

Defendants argue section 2.1(ii) of the Settlement Agreement permits Terrats, "its Affiliates or third-parties" to commercialize "Modified Retention Inserts" with no limitation as to brand or any other qualifiers. (Dkt. No. 15 at 17-18.) In response, Zest argues that the parties intended the term "Modified Retention Inserts" to be limited to the DESSLoc brand because that was at issue in the prior litigation. (Dkt. No. 29 at 13-17.)

The FAC alleges the Settlement Agreement allows Terrats to manufacture or sell Modified Retention Inserts only under the DESSLoc brand. (Dkt. No. 21, FAC ¶ 26.) It acknowledges that the Settlement Agreement does not explicitly state that Terrats may

only manufacture or sell Modified Retention Inserts under the DESSLoc brand but assert that was the intent of the parties. (*Id.*) The FAC further alleges that the Settlement Agreement was to resolve Zest's claims against DESS regarding the DESS Insert; therefore, Zest's release of claims applied only to DESS Inserts. (*Id.)* Moreover, consistent with this understanding, the FAC alleges that the release of claims did not extend to Zest's claim against Terrats customer, Zim Vie, who sold under the "OverdenSURE" brand. (*Id.*)

Section 2.1(ii) of the Agreement provides that Terrats shall

> (ii) [i]mmediately and permanently ensure that DESS[5] and its Affiliates[6] cease using in the United States or Commercializing in any way in the United States or importing into the United States in any way DESS Inserts[7] in blue, pink, clear, red, orange, or green; provided, however, DESS, its Affiliates, or third-parties may use in the United States, Commercialize[8] in the United States, or import into the United States the Modified Retention Inserts, whether individually or in combination; . . . .

(Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement ¶ 2.1(ii).) Retention Insert "means an insert that fits inside of a denture housing, and when attached, snaps over the top of an abutment and remains in constant contact with the abutment during use." (Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement ¶ 1.0.) Modified Retention Insert means "Retention Inserts that feature a design such as a 'Z' or any other clearly visible and

---

[5] DESS includes Geryon Holdings, LLC f/k/a Geryon Ventures, LLC d/b/a DESS-USA and Terrats Medical Sociedad Limitada. (Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement at p. 1.)

[6] Affiliates "means (a) as to any specified Person, any other Person that is in control of, is controlled by, or is under common control with, such specified Person . . . For purposes of this definition, 'control' of a Person means the power, directly or indirectly, to direct or cause the direction of the management and policies of such Person, whether by contract or otherwise." (Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement ¶ 1.0.)

[7] DESS Inserts "means Retention Inserts Commercialized by DESS or its Affiliates as part of the DESSLOC® brand or are otherwise Commercialized by DESS or its Affiliates to third parties for resale or redistribution to customers." (Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement ¶ 1.0.)

[8] Commercialize "means to manufacture, market, distribute, license, sell or otherwise commercialize." (Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement ¶ 1.0.)

distinguishing design on at least the top of a Retention Insert so that the Retention Inserts do not appear to only feature the Retention Insert Marks." (*Id.*)

In its opposition, Zest repeatedly argues it is relying on "extrinsic evidence" that it claims does not clearly negate[9] its alleged meaning that Modified Retention Inserts is limited to the DESSLoc brand. However, the FAC fails to allege any identifiable extrinsic evidence besides its summary allegation that the parties intended that Terrats may only commercialize Modified Retention Inserts under the DESSLoc brand because the Settlement Agreement was entered to resolve Zest's claim against Terrats regarding DESS Inserts and the Settlement Agreement's express exclusion of claims against Zim Vie from the release. (Dkt. No. 21, FAC ¶ 26.) Zest does not allege any prior negotiations, circumstances, or drafts to determine the parties' intent at the time of the making of the agreement. *See Pac. Gas*, 69 Cal. 2d at 40. Rather, Zest supports its arguments about the intent of the parties of the meaning of Modified Retention Inserts by relying on the terms of the Settlement Agreement, not extrinsic evidence.

For instance, Zest claims that the parties intended the term Modified Retention Inserts to be limited to those commercialized under the DESSLoc brand because the Settlement Agreement was entered to resolve Zest's claim against DESS, after obtaining a preliminary injunction concerning DESSLoc brand inserts. (Dkt. No. 29 at 13.) In support, Zest points to Recital I of the Agreement stating, "the Parties wish to settle, compromise, and finally resolve all matters, disputes, and claims, including those set forth in the Lawsuit and any and all claims that might have been the subject matter of potential additional causes of actions and/or counterclaims, between the Zest Releasees and the DESS Releasees (as defined below) in each case, relating to the Retention Insert

---

[9] The Court declines to apply Zest's legal standard on a motion for judgment on the pleadings for breach of contract based on California's pleading rule that the court determine whether the contract "conclusively negates" its pled meaning or renders that meaning clearly erroneous. (Dkt. No. 29 at 6, 11.) Rather, the Court must determine, considering extrinsic evidence offered by a party, whether the language in the contract is reasonably susceptible to the interpretation urged by a party. *See Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992).

Marks and the LOCATOR® Trade Dress." (Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement, Recital I.) As a starting point, recitals in a settlement agreement have no legal effect but are declaratory statements or opinions. *Emeryville Redevelopment Agency v. Harcros Pigments, Inc.*, 101 Cal. App. 4th 1083, 1101 (2002) ("The law has long distinguished between a 'covenant' which creates legal rights and obligations, and a 'mere recital' which a party inserts for his or her own reasons into a contractual instrument. Recitals are given limited effect even as between the parties."). Here, Recital I only states the parties desire to settle the entirety of the DESS litigation "relating to the Retention Insert Marks and the LOCATOR® Trade Dress." (Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement, Recital I.) It does not provide any guidance that the parties intended Modified Retention Inserts to be limited by the DESSLoc brand but instead broadly asserts the parties' intent to resolve the DESS litigation. Rather, Zest asks the Court to infer an intent from Recital I. Recital I provides no support that the parties intended on limiting Modified Retention Inserts to the DESSLoc brand.

Zest additionally argues that the fact it did not release its claim against Zim Vie is the best evidence that the parties understood Modified Retention Inserts to be limited to those sold under the DESSLoc brand because otherwise paragraph 3.3 (covenant not to sue) would have prevented Zest from continuing to pursue claims against Zim Vie and a separate dismissal would not have been necessary. (Dkt. No. 29 at 16.) Terrats reply that Zest's claims against Zim Vie in the prior litigation related to OverdenSURE products that were infringing on Zest's LOCATOR® product suite, the accused products, before the settlement and not "Modified Retention Inserts." (Dkt. No. 32 at 11.) Therefore, the covenant not to sue would not have reached past sales of non-Modified Retention Inserts. (*Id.*)

Zim Vie is referenced in two sections of the Settlement Agreement. Recital F explains "WHEREAS, Zest contends that, in or about December 2021, Zest learned that DESS had entered into a distribution arrangement with Zest's former distributor, Biomet 3i, LLC d/b/a Zim Vie, pursuant to which Zim Vie would begin marketing and selling the

At Issue Product Suite more broadly in the United States." (Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement at p. 1.) The definition of DESS Releasees states, "[f]or the avoidance of doubt, DESS Releasees do not include Biomet 3i, LLC d/b/a ZimVie and its Affiliates." (*Id.* ¶ 1.) Based on the allegation in the complaint, (Dkt. No. 21, FAC ¶ 26), it is not clear how the exclusion of Zim Vie from the release is relevant to the intent of the parties concerning limiting Modified Retention Inserts to DESSLoc brand. There could be a number of reasons why the parties in the DESS Litigation excluded Zim Vie from the Settlement Agreement and Zest negotiated its own settlement agreement and dismissal with Zim Vie. *See Zest Anchors, LLC v. Geryon Ventures, LLC*, Case No. 22cv230-TWR(NLS), Dkt. Nos. 189, 194.)

Next, the FAC alleges that the amount of money DESS paid Zest under the Settlement Agreement pales in comparison to the $500 million Zest has expended in marketing and revenue it has generated from sales over the past decade and the over $8 million it has spent obtaining and defending its Retention Insert Marks and LOCATOR® Trade Dress. (Dkt. No. 21, FAC ¶ 27.) Zest claims that it would not have given up its intellectual property rights for the sum it received from DESS. (*Id.*) Zest's allegation is not convincing. Comparing the amount Zest received from one litigation with the amounts it has spent in marketing and earned in revenue and sums spent obtaining and defending its Retention Insert Marks and LOCATOR® Trade Dress over the past ten years is not a valid or convincing comparison.[10]

Absent any alleged and valid extrinsic evidence, the Court interprets the four corners of the Settlement Agreement. After a review of the whole of the Settlement Agreement, the Court concludes that the term Modified Retention Insert is not

---

[10] The Court also notes that the Settlement Agreement resolved Geryon and Terrats counterclaims seeking, inter alia, declaratory judgment of invalidity of the Zest Insert Color Marks or "Retention Insert Marks", petition for cancellation of the Retention Insert Marks, and non-infringement. (Case No. 22cv230-TWR-SBC, Dkt. No. 30, Counterclaim ¶¶ 59-63; 71-75, 77-81.) Therefore, any amount agreed to by the parties must have taken these counterclaims into consideration.

ambiguous. First, it is salient that there are no qualifiers or limitations to "Modified Retention Inserts" and that term is defined without any qualifiers in section 1 of the Settlement Agreement. Also notable is the Settlement Agreement defines DESS Inserts as including the DESSLoc brand yet Modified Retention Inserts is not defined with a brand name. Further, the parties are sophisticated corporate entities with Zest alleging it has spent $8 million obtaining and defending its Retention Insert Marks and LOCATOR® Trade Dress. Having negotiated and drafted or litigated a number of cases, it would have qualified Modified Retention Inserts with a brand name if it had intended that meaning.

Next, the language of section 2 does not support Zest's interpretation. Section 2 initially includes a prohibition by "DESS and its Affiliates" from using the Retention Insert Marks but the latter section allows not only DESS and its Affiliates but also third-parties to commercialize Modified Retention Inserts. The addition of third-parties suggests that Modified Retention Inserts was not limiting Terrats and its Affiliates from commercializing Modified Retention Inserts under the DESSLoc brand. Rather, it expanded the use of Modified Retention Inserts to any third party which logically means non-DESSLoc brand Modified Retention Inserts. Plus, the Settlement Agreement includes an integration clause[11], stating the Settlement Agreement constitutes the entire agreement of parties, and while not dispositive, is strong evidence of the parties' intent. *See Slivinsky v. Watkins–Johnson Co*., 221 Cal. App. 3d 799, 805 (1990).

Finally, the confidentiality provision supports Terrats' position that the parties' understood that "there is no prohibition on the sale of the Modified Retention Inserts." (Dkt. No. 15 at 18.) Paragraph 13.1 provides that "[t]he Parties agree that, except as set

---

[11] Paragraph 12 state, "[t]his Settlement Agreement, constitute the entire agreement to settle and resolve the Claims released by this Settlement Agreement among the Parties and override and replace all prior negotiations and terms proposed, discussed, or agreed to, whether in writing or orally, about the subject matter. No modification of this Settlement Agreement shall be valid unless it is in writing, identified as an amendment to the Settlement Agreement, and signed by all Parties." (Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement ¶ 12.0.)

forth herein, the terms of this Settlement Agreement are confidential, and that they will not at any time hereafter disclose the substance or contents of this Settlement Agreement, including the amount or fact of payment of money, provided that the Parties may disclose that the matter has been settled and, if in response to a business related inquiry, the Parties may disclose that the Parties have agreed that there is no prohibition on the sale of the Modified Retention Inserts." (Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement ¶ 13.1.) The use of Modified Retention Inserts rather than identifying them as limited to DESSLoc brand informs that Zest did not intend to limit Modified Retention Inserts to a particular brand. Therefore, the Court concludes that the term "Modified Retention Insert" is not ambiguous and is not limited to the DESSLoc brand.

**2. "Customers"**

Next, the parties dispute the meaning of "customers" under the covenant not to sue provision. Defendants contend that under section 3.3, Zest's covenant not to sue "customers of DESS or any of its Affiliates" has no temporal qualifier such as "current customers" or "customers as of the Effective Date." (Dkt. No. 15 at 19-20.) Zest argues that the FAC alleges that "customers" is limited to "past and/or present Affiliates." (Dkt. No. 29 at 18-19.)

The FAC alleges that in exchange for filing a stipulation of dismissal with prejudice in the DESS Litigation, it also agreed not to assert any claims that the Modified Retention Inserts violate its Retention Inserts Marks and/or LOCATOR® Trade dress against "customers of DESS or any of its Affiliates." (Dkt. No. 21, FAC ¶ 29.) According to the FAC, "customers" is not defined but in line with the retrospective nature of the Settlement Agreement, and retrospective definition of Affiliates, it was the parties' intent that "customers" include only DESS's present and past customers. (*Id.*)

Section 3 includes a release and a separate covenant not to sue by Zest. The release provision states,

> At the Effective Time, Zest, on behalf of itself and the Zest Releasees, hereby completely, fully, finally, and forever dismisses, releases,

> relinquishes and discharges with prejudice DESS and the DESS Releasees from and covenants not to assert against DESS and the DESS Releases (sic) in any other proceeding all Claims that were asserted or could have been asserted in the Lawsuit, including but not limited to Claims that the At Issue Product Suite, at any time prior to the Effective Date, infringed, diluted, or violated Zest's trademarks and trade dress, and thus caused the Zest Releasees Losses.

(Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement ¶ 3.1.) DESS Releasees include "Geryon Holdings, LLC f/k/a Geryon Ventures, LLC d/b/a DESS-USA and Terrats Medical Sociedad Limitada along with their respective *past and/or present* Affiliates and in their representative capacity, its and their respective *past and/or present* employees, officers, directors, agents, representatives, advisers, counsel, insurers, and all successors, predecessors, and assigns of the foregoing. For the avoidance of doubt, DESS Releasees do not include Biomet 3i, LLC d/b/a ZimVie and its Affiliates." (Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement at p. 2 (emphasis added).)

Separately, the covenant not to sue provision states,

> Zest and the Zest Releasees hereby covenant not to assert, and shall not license, authorize, enable, assist, consent to, encourage, facilitate, promote, or permit any other Person or entity to assert, any Claim that the Modified Retention Inserts, including the Commercialization of the Modified Retention Inserts, infringe, dilute, or otherwise violate the Retention Inserts Marks and/or the LOCATOR® Trade Dress or constitute unfair competition. For the avoidance of doubt, the covenants in this Paragraph 3.3 shall be deemed to include the protection of (in their representative capacity, as applicable) the employees, officers, directors, agents, representatives, service providers, advisers, counsel, insurers, *and customers of DESS or any of its Affiliates.*

(Dkt. No. 15-2, Wesley Decl., Ex. A, Sett. Agreement ¶ 3.3 (emphasis added).)

Zest maintains that because DESS Releasees include "past and/or present Affiliates" of Geryon Holdings and Terrats, the parties intended the term customer to be limited to Terrats' then current and past customers. (Dkt. No. 29 at 18.)

Here, the release provision concerns DESS Releasees which is limited to past and/or present Affiliates. However, the covenant not to sue, a separate and distinct provision does not include DESS Releasees but rather utilizes broader language to include "customers of DESS or any of its Affiliates." *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 & n. 10 (9th Cir. 2012) (A release and a convent not to sue are distinct). Further, as sophisticated parties, if they intended to temporarily limit DESS Releasees to "past and/or present Affiliates" they could have included "past and/or present customers" in the covenant not to sue. *See Texcell Inc. v. STS Hydropower Ltd.*, No. 2:18-cv-01621-KJM-DMC, 2020 WL 5107620, at * (E.D. Cal. Aug. 31, 2020) (provision on timing of termination not susceptible to more than one interpretation because if the parties intended to limit the defendant's ability to terminate, they could have included an express temporal limitation as they did in a subsequent section). Here, Zest does not explain the distinction between "past and/or present Affiliates" in the release to the absence of a temporal restrictions to "customers" in the covenant not to sue.

Zest repeats its argument that because the Settlement Agreement did not expressly release Zim Vie, Terrats' interpretation of customer is not consistent with the Agreement. (Dkt. No. 29 at 19.) Paragraph 3.3 would have barred Zest from continuing to pursue its claims against ZimVie since it was a customer of Terrats and no separate dismissal would have been necessary. (Dkt. No. 29 at 19.) As discussed above, the allegation as to Zim Vie does not appear to relevant to the intent of the parties concerning the meaning of customers in the Settlement Agreement. Accordingly, the Court finds that "customers" is not ambiguous and is not limited to Terrats past and/or present customers. *See Brinton v. Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 550, 560-61 (1999) ("Plaintiff's undisclosed intent concerning his claim against defendant is simply inadmissible to contradict the comprehensive and broad language of the settlement agreement's release of claims clause.").

In conclusion, the Court GRANTS Defendants' motion for judgment on the breach of contract claim for failing to allege breach based on the meaning of Modified Retention Inserts and Customers.

**E. Paragraph 40**

Lastly, Zest argues the motion must be denied because it has raised a factual dispute by alleging that the PreatLoc Products are not "Modified Retention Inserts" that Terrats and Medealis are permitted to commercialize under the Settlement Agreement and Preat is not a "customer" under the Settlement Agreement. (Dkt. No. 29 at 22-23.) Defendants reply that paragraph 40 is a legal conclusion and not a factual dispute and Zest has failed to explain why PreatLoc products are not "Modified Retention Inserts." (Dkt. No. 32 at 13.) In fact, they explain that "Modified Retention Inserts", by definition, bears Zest's Retention Insert Marks plus a distinguishing design so that it does "not appear to only feature" them. (*Id.* (quoting Sett. Agreement ¶ 1.0).) In the Preat litigation, even though Zest alleges trademark and trade dress infringement of its Retention Insert Marks, PreatLoc Products can bear Zest's Retention Insert Marks as long as they have a distinguishing design so as not to only feature them. (*Id.)*

Paragraph 40 summarily alleges that "PreatLoc products are not 'Modified Retention Inserts' that Defendants are permitted to manufacture or sell under the Settlement Agreement. Nor is Preat a 'customer' under the Settlement Agreement that Zest agreed to refrain from suing for infringement." (Dkt. No. 21, FAC ¶ 40.) First, paragraph 40 is a summary allegation without any supporting facts to allege a breach. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (conclusory allegations and unwarranted inferences are not sufficient to defeat a motion to dismiss). Further, as discussed above and decided above, to the extent paragraph 40 is alleging PreatLoc products are not "Modified Retention Inserts" based on Zest's interpretation that Modified Retention Inserts must be DESSLoc brand and customers must be "past and/or present" customers of Terrats, paragraph 40 fails to allege a breach. Accordingly,

the Court GRANTS the motion for judgment on the pleadings for failure to allege a breach of the Settlement Agreement.

**F. Leave to Amend**

Zest seeks leave to amend in the event the Court grants dismissal of the first amended complaint. (Dkt. No. 29 at 24-25.) It asserts that it will add further facts including "[1] Neither the parties to the Agreement, nor ZimVie, have ever taken the position that the Agreement extended to the claims that Zest had asserted against ZimVie in the Prior Litigation; [2] Zest had a number of distribution agreements at the time it entered into the Agreement and its custom and practice was to include protections for its intellectual property that are entirely inconsistent with Terrats' interpretation of the Agreement; [3] That Zest understood the term 'Modified Retention Insert' to be limited to retention inserts sold under the DESSLoc brand; and [4] Additional facts regarding the resolution of the claim against ZimVie that Zest has not previously been able to allege due to confidentiality obligations." (*Id.*)

"Although Rule 12(c) does not mention leave to amend, courts have discretion to grant motions for judgment on the pleadings with leave to amend." *Crescencio v. Ford Motor Co*., 811 F. Supp. 3d 1132, 1141 (C.D. Cal. 2025) (citation omitted). Courts also have discretion to deny leave to amend where an amendment would be futile. *See Hip Hop Beverage Corp. v. Michaux*, 729 F. App'x 599, 600 (9th Cir. 2018) (affirming judgment on the pleadings dismissal without leave to amend based on futility); *see also Crosby v. Wells Fargo Bank, N.A.*, 42 F. Supp. 3d 1343, 1346 (C.D. Cal. 2014) (dismissing complaint without leave to amend where amendment would be futile).

Zest's proposed amendment of extrinsic evidence concerns its own intent, conduct outside the negotiation and drafting of the agreement, and positions of a third party, Zim Vie, and do not support the parties' intent at the time of contracting the Settlement Agreement concerning "Modified Retention Inserts" and "customer." *See Founding Members of Newport Beach Country Club v. Newport Beach Country Club, Inc*., 109 Cal. App. 4 944, 956 (2003) ("California recognizes the objective theory of contracts . . .

under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation'"); *Pac. Gas*, 69 Cal. 2d at 40 (extrinsic evidence includes "'circumstances surrounding the making of the agreement . . . including the object, nature and subject matter of the writing . . .' so that the court can 'place itself in the same situation in which the parties found themselves at the time of contracting.'"). As such, the Court DENIES Zest's request for leave to amend as to its proposed amendments. *See Great Minds v. Office Depot, Inc.,* 945 F.3d 1106, 1112 (9th Cir. 2019) (concluding district court did not abuse its discretion denying leave to amend when appellant offers three pieces of extrinsic evidence but none were relevant to the ultimate issue).

However, as to paragraph 40, to the extent Zest claims that PreatLoc Products are not "Modified Retention Inserts" based on its design as defined in the Settlement Agreement or any other reason besides claiming they must be DESSLoc brand, then Zest is granted leave to amend. The Court also grants leave to amend for Zest to provide further allegations that Preat is not a customer of Defendants even though the FAC alleges that on April 30, 2026, Zest received a letter from Terrats' counsel stating that Preat is a customer of Terrats; Terrats and Medealis filed counterclaims in this case alleging Preat entered into a contract with Medealis to supply dental parts for Preat; and Terrats and Medealis manufacture and sell the PreatLoc products to Preat. (Dkt. No. 21, FAC ¶¶ 37-39.)

**Conclusion**

Based on the reasoning above, the Court GRANTS Defendants Terrats and Medealis' motion for judgment on the pleadings with limited leave to amend. Zest may file a second amended complaint within 14 days of the Court's order. The hearing set on

/ / /

/ / /

/ / /

/ / /

October 23, 2026 shall be **vacated**.

IT IS SO ORDERED.

Dated: October 20, 2026

Hon. Gonzalo P. Curiel
United States District Judge