GEORGE LLP
Keith J. Wesley (State Bar No. 229276)
kwesley@georgellp.com
Courtney L. Mitchell (State Bar No. 229598)
cmitchell@georgellp.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

*Attorneys for Defendants and Counterclaim Plaintiffs*
*Terrats Medical Sociedad Limitada and Medealis GmbH*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ZEST IP HOLDINGS, LLC, and ZEST ANCHORS, LLC,

Plaintiffs,

vs.

TERRATS MEDICAL SOCIEDAD LIMITADA and MEDEALIS GMBH,

Defendants.

Case No. 3:26-cv-02869-GPC-MMP

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (FED. R. CIV. P. 12(b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES**

[*Filed concurrently with Request for Judicial Notice*]

Date: February 5, 2027
Time: 1:30 p.m.
Place: Courtroom 12A
Judge: Hon. Gonzalo P. Curiel

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on February 5, 2027, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 12A of the above-entitled Court, located at the James M. Carter and Judith N. Keep United States Courthouse, 333 West Broadway, San Diego, California 92101, before the Honorable Gonzalo P. Curiel, Defendants and Counterclaim Plaintiffs Terrats Medical Sociedad Limitada and Medealis GmbH ("Defendants") will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing without leave to amend the Second Amended Complaint (Dkt. 44) of Plaintiffs Zest IP Holdings, LLC and Zest Anchors, LLC (together, "Zest").

The motion is made on the grounds that the Second Amended Complaint fails to state a claim for breach of contract. Paragraph 2.1(ii) of the Settlement Agreement, the only provision that Zest alleges Defendants breached, contains no promise about a "product suite," and the remaining allegations of the Second Amended Complaint are those that the Court held insufficient as a matter of law in its Order of October 20, 2026 (Dkt. 40).

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the Settlement Agreement previously filed as Exhibit A to the Declaration of Keith J. Wesley (Dkt. 15-2), the pleadings and records on file in this action, and on such further oral and documentary evidence as may be presented at the hearing. Defendants' counterclaims (Dkt. 27) are not the subject of this motion and remain pending.

Pursuant to Civil Local Rule 7.1(i)(1), the undersigned certifies that Terrats moved for judgment on the pleadings on June 12, 2026 (Dkt. 15), that Medealis joined that motion on July 13, 2026 (Dkt. 28), and that the Honorable Gonzalo P. Curiel granted the motion with limited leave to amend on October 20, 2026 (Dkt. 40). This motion is directed to the Second Amended Complaint, which Zest filed on

November 3, 2026, after that ruling, and which pleads a "product suite" theory that the First Amended Complaint did not.

Counsel has obtained the foregoing hearing date from chambers in accordance with Judge Curiel's Civil Chambers Rules. The motion and supporting papers are being filed and served the same day the hearing date was obtained.

DATED: November 13, 2026

Respectfully submitted,

GEORGE LLP

*/s/ Keith J. Wesley*
Keith J. Wesley

*Attorneys for Defendants and Counterclaim Plaintiffs Terrats Medical Sociedad Limitada and Medealis GmbH*

## TABLE OF CONTENTS


1. INTRODUCTION ........ 6
2. BACKGROUND ........ 7
   - A. The Settlement Agreement ........ 7
   - B. The Order ........ 8
   - C. The Second Amended Complaint ........ 8
3. LEGAL STANDARD ........ 9
4. ARGUMENT ........ 9
   - A. The "Product Suite" Theory Identifies No Promise That Defendants Broke ........ 9
   - B. The Remaining Theories Are the Ones the Court Already Rejected, and Paragraph 47 Adds No Claim ........ 11
   - C. Further Leave to Amend Should Be Denied ........ 13
5. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .... 9

*Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018) .... 12

*Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924 (9th Cir. 2003) .... 9

*Great Minds v. Office Depot, Inc.*, 945 F.3d 1106 (9th Cir. 2019) .... 9, 13

*Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954 (2010) .... 13

*Salameh v. Tarsadia Hotel*, 726 F.3d 1124 (9th Cir. 2013) .... 13

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039 (S.D. Cal. 2019) .... 12

*Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351 (9th Cir. 1996) .... 13

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998) .... 9

*Stockton Dry Goods Co. v. Girsh*, 36 Cal. 2d 677 (1951) .... 10

*United States ex rel. Relator, LLC v. Erskine*, 182 F.4th 785 (9th Cir. 2026) .... 13

*Zest Anchors, LLC v. Geryon Ventures, LLC*, Nos. 22-55704, 22-55778, 2023 WL 2783175 (9th Cir. Apr. 5, 2023) .... 7

**Statutes**

Cal. Civ. Proc. Code § 1858 .... 10

**Rules**

Fed. R. Civ. P. 12(b)(6) .... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

On October 20, 2026, the Court granted judgment on the pleadings on Zest's single claim for breach of a 2024 Settlement Agreement (the "Agreement"). Dkt. 40 ("Order"). Zest had alleged that Defendants breached the Agreement by making and selling "PreatLoc" products for Preat Corporation ("Preat"), a former Zest distributor. Order at 4–5. The Court held that "the term 'Modified Retention Insert' is not ambiguous and is not limited to the DESSLoc brand," and that "'customers' is not ambiguous and is not limited to Terrats past and/or present customers." Order at 16, 18.

The Court then told Zest what it could plead. Zest was given leave to amend "to the extent Zest claims that PreatLoc Products are not 'Modified Retention Inserts' based on its design as defined in the Settlement Agreement or any other reason besides claiming they must be DESSLoc brand," and "to provide further allegations that Preat is not a customer of Defendants." Order at 21.

The Second Amended Complaint (Dkt. 44, "SAC") pleads no theory based on design. It does not allege that any PreatLoc insert lacks the "clearly visible and distinguishing design" that defines a Modified Retention Insert. Order at 11–12. It adds not one fact bearing on whether Preat is a customer. Instead, in the paragraphs that plead the breach, the "PreatLoc products" of the First Amended Complaint (Dkt. 21, "FAC") have become the "PreatLoc product suite," and Zest's one new reason is that the suite "is not a 'Modified Retention Insert'" and that the Agreement "only authorizes" Defendants to sell modified inserts. SAC ¶ 46.

That theory fails as a matter of law, and no new fact can cure it. A claim for breach of contract requires a promise that was broken. Paragraph 2.1(ii), the only provision that Zest claims was breached, restricts the colors of retention inserts and contains no promise about a "product suite." A permission to sell one thing is not a promise to refrain from selling another. The SAC should be dismissed without leave

to amend.

## 2. BACKGROUND

### A. The Settlement Agreement

In April 2024, Zest and Terrats settled a suit in which Zest had asserted trademarks in the colors of its LOCATOR® retention inserts and a trade dress in its LOCATOR® products. SAC ¶¶ 19, 22–23. On appeal from a preliminary injunction in that suit, the Ninth Circuit observed that "[t]he abutment itself appears to be entirely functional," and it sustained the injunction "on the theory that the color scheme for the inserts is nonfunctional." *Zest Anchors, LLC v. Geryon Ventures, LLC*, Nos. 22-55704, 22-55778, 2023 WL 2783175, at *3 (9th Cir. Apr. 5, 2023).

The Agreement is in the record, Dkt. 15-2, Ex. A, and the Court considered it "as incorporated by reference in the FAC." Order at 6. The SAC likewise quotes the Agreement and pleads a breach of it. SAC ¶¶ 24–30, 56. Paragraph 2.1(ii) obliges Terrats to ensure that DESS, a term that includes Terrats, and its Affiliates "cease using in the United States or Commercializing in any way in the United States or importing into the United States in any way DESS Inserts in blue, pink, clear, red, orange, or green." Order at 11 & n.5. The paragraph then adds a proviso, under which "DESS, its Affiliates, or third-parties may use in the United States, Commercialize in the United States, or import into the United States the Modified Retention Inserts, whether individually or in combination." Order at 11.

A "Retention Insert" is "an insert that fits inside of a denture housing, and when attached, snaps over the top of an abutment and remains in constant contact with the abutment during use." Order at 11. "DESS Inserts" are Retention Inserts "Commercialized by DESS or its Affiliates as part of the DESSLOC® brand" or otherwise commercialized by them for resale or redistribution. Order at 11 n.7. A "Modified Retention Insert" is a Retention Insert that features "a design such as a 'Z' or any other clearly visible and distinguishing design on at least the top of a Retention Insert" so that the inserts "do not appear to only feature the Retention

Insert Marks." Order at 11–12.

**B. The Order**

The FAC alleged that Defendants breached the Agreement by making and selling "PreatLoc products" for Preat. FAC ¶¶ 34, 39–41. Zest purportedly read the Agreement to permit Modified Retention Inserts only under the DESSLoc brand, and to protect as "customers" only the current and past customers of DESS. The Court rejected both readings on the Agreement's text. Order at 14–18. It held the FAC's remaining allegation—that the PreatLoc products "are not 'Modified Retention Inserts'" and that Preat is not a "customer"—to be "a summary allegation without any supporting facts to allege a breach." Order at 19. The Court then granted the limited leave quoted above. Order at 21.

**C. The Second Amended Complaint**

Zest filed the SAC on November 3, 2026. It again pleads one count, for breach of "Paragraph 2.1(ii) of the Settlement Agreement." SAC ¶ 56. In the paragraphs that plead the breach, the "PreatLoc products" are now the "PreatLoc product suite." *Compare* FAC ¶¶ 39–41, 49, *with* SAC ¶¶ 45–46, 48, 56. The SAC alleges that the suite is "an entire overdenture attachment suite akin to the 'At Issue Product Suite' defined in the Settlement Agreement." SAC ¶ 46. It alleges that Defendants may not sell the suite because "the Settlement Agreement only authorizes Defendants to manufacture or sell specific retention inserts with a modified design," SAC ¶ 46, and that Zest's own covenant not to sue "is not applicable to the PreatLoc Product Suite," SAC ¶ 47.

The SAC contains no allegation about the design on any PreatLoc insert. Its only allegation that Preat is not a customer is a sentence repeated from the FAC. *Compare* FAC ¶ 40, *with* SAC ¶ 46. And the SAC repeats the brand and customer readings, explaining that they "have been replead to preserve issues for appeal." SAC at 2 n.1; SAC ¶¶ 31–32, 35.

## 3. LEGAL STANDARD

A complaint that fails to state a claim is dismissed under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

"Under California law, the interpretation of contract language is a question of law." *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (quoting *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003)). "If the disputed language is not reasonably susceptible to the interpretation urged by the party, the case is over." Order at 10.

## 4. ARGUMENT

### A. The "Product Suite" Theory Identifies No Promise That Defendants Broke

The SAC's single count alleges a breach of "Paragraph 2.1(ii) of the Settlement Agreement." SAC ¶ 56. That paragraph contains exactly one prohibition. Terrats must ensure that DESS and its Affiliates stop using, commercializing, or importing "DESS Inserts in blue, pink, clear, red, orange, or green." Order at 11. The proviso then states what may still be done. It permits "the Modified Retention Inserts, whether individually or in combination." Order at 11.

Paragraph 2.1(ii) thus concerns inserts, and the Agreement defines an insert by reference to the parts it is used with. A Retention Insert "fits inside of a denture housing" and "snaps over the top of an abutment." Order at 11. The housing and the abutment are not inserts, and paragraph 2.1(ii) restricts neither. Nor does it contain the word "suite."

The SAC's new allegation—that the "PreatLoc product suite is not a 'Modified Retention Insert'"—therefore states no breach. SAC ¶ 46. Under the

Agreement, what separates a permitted insert in those colors from a prohibited one is the "clearly visible and distinguishing design" that the definition requires. Order at 11–12. The SAC pleads the proviso and quotes the definition. SAC ¶¶ 28, 46. Yet the SAC contains not one allegation about the top of any PreatLoc insert, or about any design on it, although the Court gave Zest leave to plead a theory based on design. Order at 21. Without the word "suite," the allegation is the one that the Court held to be "a summary allegation without any supporting facts to allege a breach." Order at 19.

The premise of the new theory appears later in paragraph 46, which alleges that Defendants "are not permitted" to sell the suite "because the Settlement Agreement only authorizes Defendants to manufacture or sell specific retention inserts with a modified design." SAC ¶ 46. That reads the proviso as an exclusive license, under which whatever is not authorized is forbidden. The Agreement says no such thing. The proviso limits the prohibition that precedes it, and it marks where that prohibition stops. It does not extend the prohibition to products that the prohibition never mentions. The SAC pleads a breach of contract, and paragraph 2.1(ii) contains no promise about an abutment, a housing, or a suite.

California law does not permit a court to supply the missing promise. The court's office is "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted." Cal. Civ. Proc. Code § 1858. In *Stockton Dry Goods Co. v. Girsh*, 36 Cal. 2d 677, 679 (1951), a lessee claimed "the sole and exclusive right under the lease to operate a shoe department in the store," although the lease did not say so. The California Supreme Court refused to imply the restriction. "The question of what is to be included in the contract is for the parties, not for the court, to determine." *Stockton Dry Goods*, 36 Cal. 2d at 680. "A condition cannot be read into a contract as to which the parties might well be deemed to have remained intentionally silent." *Stockton Dry Goods*, 36 Cal. 2d at 681.

The parties used the word "suite" elsewhere in the Agreement. They defined an "At Issue Product Suite," SAC ¶ 24, and released claims about it, SAC ¶ 34. They also addressed materials used to market DESS Inserts "in connection with the Commercialization of the DESS Inserts or any overdenture attachment suite in the United States," and required that those materials "display the Modified Retention Inserts in a way that visibly distinguishes them from the LOCATOR® Retention Inserts." SAC ¶ 30. The Agreement's own example of conforming marketing materials depicts an overdenture system, with an abutment and a housing shown with the inserts. Dkt. 15-2, Ex. A (Agreement), Ex. C, at 19. Yet paragraph 2.1(ii) restricts only DESS Inserts in six colors.

So too in the Order, where the Court reasoned that Zest "would have qualified Modified Retention Inserts with a brand name if it had intended that meaning," and that the parties "could have included 'past and/or present customers' in the covenant not to sue." Order at 15, 18.

Zest's reading of "individually or in combination" changes nothing. Zest alleges that the phrase refers to the sale of Modified Retention Inserts "as a single Modified Retention Insert or as a set of multiple Modified Retention Inserts." SAC ¶ 29. Even taken as Zest pleads it, the phrase describes what is permitted and prohibits nothing.

Finally, the reasoning that disposed of the brand reading disposes of the suite theory as well. The Court found it "salient that there are no qualifiers or limitations to 'Modified Retention Inserts.'" Order at 15. A rule that a Modified Retention Insert loses its permission when it is sold with the abutment and the housing that it is made to fit is a qualifier, and the Agreement does not state it.

### B. The Remaining Theories Are the Ones the Court Already Rejected, and Paragraph 47 Adds No Claim

The SAC's other theories are the FAC's, as Zest acknowledges. SAC at 2 n.1. The SAC again alleges that Modified Retention Inserts may be sold "only under the

'DESSLoc' brand" and that "customers" means "only DESS's current and past customers." SAC ¶¶ 31, 35. It again seeks an injunction against "Modified Retention Inserts not under the DESSLoc brand." SAC at 12 (Prayer ¶ d). The Court has held otherwise. Order at 16, 18.

The customer allegation is unchanged as well. The Court gave leave for "further allegations that Preat is not a customer of Defendants even though the FAC alleges" that Terrats's counsel sent a letter "stating that Preat is a customer of Terrats," that Defendants' counterclaims allege that "Preat entered into a contract with Medealis to supply dental parts for Preat," and that Defendants "manufacture and sell the PreatLoc products to Preat." Order at 21. The SAC repeats those three allegations. SAC ¶¶ 43–45. Its only allegation that Preat is not a customer repeats, word for word, the last sentence of paragraph 40 of the FAC, which the Court held insufficient. *Compare* FAC ¶ 40, *with* SAC ¶ 46; Order at 19.

The Court may therefore rest on its prior reasoning. When an amended complaint is "substantially the same as the initial complaint, the district court is free to follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018). This Court has relied on its prior reasoning where an amended pleading's allegations were unchanged. "Because the factual allegations in the FAC are the same as the initial complaint, the Court relies on its reasoning in the prior order." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1047 (S.D. Cal. 2019).

Nor does paragraph 47 or the amended prayer add a claim. Paragraph 47 alleges that, because the suite "is not a Modified Retention Insert," Zest's covenant not to sue in paragraph 3.3 "is not applicable to the PreatLoc Product Suite," and the prayer asks for a judgment to that effect. SAC ¶ 47; SAC at 11 (Prayer ¶ a). But paragraph 3.3 is Zest's promise, and what Zest promised not to assert cannot supply a promise by Defendants not to sell. The reach of that covenant over Zest's suit

against Preat is the subject of Defendants' counterclaims, Dkt. 27, which this motion does not address. The prayers for an injunction fall with the claim. SAC at 12 (Prayer ¶¶ d, e).

**C. Further Leave to Amend Should Be Denied**

"Dismissal without leave to amend is proper if it is clear that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Great Minds*, 945 F.3d at 1112 (citation omitted). That is the case for the suite theory, because its defect lies in the Agreement and not in the pleading. No new fact can add to paragraph 2.1(ii) a promise about a product suite. In *Great Minds*, the district court denied leave to amend because its "interpretation of the License was a question of law," and the Ninth Circuit agreed. *Great Minds*, 945 F.3d at 1112. The Court relied on *Great Minds* when it denied leave on the brand and customer readings, because Zest's proposed additions did "not support the parties' intent at the time of contracting the Settlement Agreement concerning 'Modified Retention Inserts' and 'customer.'" Order at 20–21. *See also Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 958 (2010) (demurrer properly sustained without leave to amend "because the policy was not reasonably susceptible to Hervey's interpretation of it").

Zest has also had the benefit of the Court's ruling. "A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996)). The Order identified what the FAC lacked and granted leave. Order at 19, 21. The SAC pleads no design theory and no new fact about Preat, and the one other reason that it offers fails as a matter of law. *Cf. United States ex rel. Relator, LLC v. Erskine*, 182 F.4th 785, 796 (9th Cir. 2026) (denial of leave reversed where the plaintiff, when it amended, "did not have the benefit of a court order identifying specific deficiencies in its pleading").

Nor would further leave serve a purpose as to design. Zest's complaint against Preat, filed in this District on March 6, 2026, reproduces images of PreatLoc inserts that bear the word "Preat" on the top. Request for Judicial Notice ("RJN"), Ex. A ¶¶ 48–49, 51. Zest's motion for a preliminary injunction in that action, filed July 8, 2026, reproduces an image of "the PreatLoc system" in which the same word appears on one of the parts. RJN, Ex. B at 11. Preat then alleged in that action that it uses "the name 'Preat,' on its dental inserts," and Zest answered on August 26, 2026, that it "is without knowledge or information sufficient to admit or deny the allegations in this paragraph, and therefore denies them." RJN, Ex. C at 22. If Zest knows what its own images show, it has chosen not to plead a design theory. If it does not know, it has none to plead. Defendants cite these filings only for what Zest has shown and said in them.

## 5. CONCLUSION

The Court should dismiss the Second Amended Complaint without leave to amend. Defendants' counterclaims, Dkt. 27, remain pending.

DATED: November 13, 2026

Respectfully submitted,

GEORGE LLP

*/s/ Keith J. Wesley*
Keith J. Wesley
*Attorneys for Defendants and Counterclaim Plaintiffs Terrats Medical Sociedad Limitada and Medealis GmbH*